Gary A. Nye
(State Bar No. 126104)
gan@rpnalaw.com
David A. Carman
(State Bar No. 150486)
dac@rpnalaw.com
Members of **ROXBOROUGH, POMERANCE, NYE & ADREANI LLP**
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Telephone: (818) 992-9999
Facsimile: (818) 992-9991

Attorneys for Defendant Daryl Wen He

**THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCHENKER, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>DARYL HE a/k/a WEN DA HE, individually, STEPHANIE KONG, individually, ACCURATE CARGO SERVICES, a California corporation, GEORGE HO, individually, and GEORGE HO d/b/a LEADER EXPEDITE,<br><br>Defendants. | Case No. 2:16-CV-06321 CAS (PLAx)<br><br>Answer and Demand for Jury Trial |

Defendant Daryl Wen He ("He") answers the first amended complaint as follows:

**Admissions and Denials**

1. Answering paragraph 1 of the first amended complaint, He denies each and every allegation therein.

2. Answering paragraph 2 of the first amended complaint, He admits that: (a) he used to work for Schenker, Inc. ("Schenker") as an Ocean Import Manage; (b) he resigned from his employment with Schenker on March 10, 2013; (c) during the last two years of his employment with Schenker, he organized freight forwarding services out of Schenker's office; (d) at the request of his immediate supervisor at Schenker, he concealed, from other Schenker employees, some of the freight forwarding services that he organized out of Schenker's office; (e) during the last two years of his employment with Schenker, he organized a number of ocean freight shipments from Asia, including from China, to various destinations in the United States; (f) during the last two years of his employment with Schenker, he organized trucking services for a number of ocean containers already located in California and elsewhere; (g) during the last two years of his employment with Schenker, Schenker received invoices from companies that had performed freight forwarding services for Schenker, and Schenker received invoices from companies that had performed trucking services for Schenker, and he caused Schenker to pay at least some of those invoices. Except as so admitted, He denies each and every allegation contained in paragraph 2 of the first amended complaint.

3. Answering paragraph 3 of the first amended complaint, He admits that: (a) after organizing freight forwarding services and trucking services, he should have sent invoices to other companies and individuals to collect revenue to cover the expenses he had caused Schenker to pay, and to

make a profit; and (b) he sent a number of communications to Stephanie Kong, Accurate Cargo Services, and George Ho regarding the progress of, and the completion of, certain freight forwarding services, and certain trucking services, that he had organized, as an employee of Schenker. He is without sufficient knowledge or information to form a belief as to the allegation that, once freight forwarding services and trucking services were complete, the other Defendants sent invoices to third parties for those services, and then divided the money among themselves after those invoices were paid, and, on that basis, denies that allegation. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 3 of the first amended complaint.

4. Answering paragraph 4 of the first amended complaint, He admits that, in certain instances, and with the knowledge of, and at the request of, his immediate supervisor at Schenker: (a) he did not open a file for certain services; and (b) he booked some expenses in unrelated files. Except as so admitted, He denies each and every allegation contained in paragraph 4 of the first amended complaint, including the allegation that there was an “Enterprise.”

5. Answering paragraph 5 of the first amended complaint, He admits that: (a) he resigned from Schenker on March 10, 2013; and (b) after resigning from Schenker, he was no longer able to organize shipments using Schenker’s resources. Except as so admitted, He denies each and every allegation contained in paragraph 5 of the first amended complaint, including the allegation that the Defendants were engaged in any scheme.

6. Answering paragraph 6 of the first amended complaint, He admits the allegations therein.

/ / /

7. Answering paragraph 7 of the first amended complaint, He admits that: (a) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1367; and (b) the amount in controversy, exclusive of interest and costs, is in excess of $75,000. Except as so admitted, He is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 7, and, on that basis, he denies those allegations.

8. Answering paragraph 8 of the first amended complaint, He admits that venue is proper in this judicial district pursuant to 18 U.S.C. section 1965 and 28 U.S.C. section 1391 because He is subject to personal jurisdiction in this judicial district and resides in this judicial district. Except as so admitted, He is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 8, and, on that basis, he denies those allegations.

9. Answering paragraph 9 of the first amended complaint, He admits that venue is proper in this district because a substantial part of the alleged events giving rise to this action are alleged to have occurred in this district. But, except as expressly admitted in this answer, He denies that any of the alleged events giving rise to this action occurred.

10. Answering paragraph 10 of the first amended complaint, He admits that Schenker is a New York corporation. Except as so admitted, He is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 10, and, on that basis, he denies those allegations.

11. Answering paragraph 11 of the first amended complaint, He admits the allegations therein.

12. Answering paragraph 12 of the first amended complaint, He admits the allegations therein.

13. Answering paragraph 13 of the first amended complaint, He admits the allegations therein.

14. Answering paragraph 14 of the first amended complaint, He admits that: (a) according to publicly available information, Stephanie Kong ("Kong") is the president of Accurate Cargo Services ("ACS"); and (b) according to the California Secretary of State records, Kong is the designated agent for service of process for ACS. He is without sufficient knowledge or information to form a belief as to the allegation that Kong is the sole owner of ACS, and, on that basis, denies that allegation. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 14, including the allegation that there was a scheme.

15. Answering paragraph 15 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegation contained therein, and, on that basis, denies that allegation.

16. Answering paragraph 16 of the first amended complaint, He admits that, in the past, he and Kong were personal friends for a number of years. Except as so admitted, He denies each and every allegation contained in paragraph 16.

17. Answering paragraph 17 of the first amended complaint, He admits that George Ho ("Ho") previously worked at Schenker as a customer broker. He is without sufficient knowledge or information to form a belief as to the remaining allegations contained in paragraph 17, and, on that basis, denies those allegations.

18. Answering paragraph 18 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) Ho was associated with a company called Leader International; (b) Ho is still associated with a

company called Leader International; and (c) Ho used an e-mail address associated with a company called Leader International shortly after Ho's employment relationship with Schenker ended. Except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation in paragraph 18, including the allegation that there was an "Enterprise," and the allegation that there was a "scheme."

19. Answering paragraph 19 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegation contained therein, and, on that basis, denies that allegation.

20. Answering paragraph 20 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

21. Answering paragraph 21 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies that allegation.

22. Answering paragraph 22 of the first amended complaint, He denies each and every allegation therein.

23. Answering paragraph 23 of the first amended complaint, He admits the allegations therein.

24. Answering paragraph 24 of the first amended complaint, He admits the allegations therein.

25. Answering paragraph 25 of the first amended complaint, He admits that: (a) starting in or about November 2011, and continuing through approximately August 2012, he, in his position as Ocean Import Manager for Schenker, instructed trucking companies to pick up full ocean containers and to deliver them to Sunshine Metal Clad, Inc., in Bakersfield, California; and (b) he caused Schenker to pay the trucking companies for picking up full ocean containers and then delivering them to Sunshine Metal Clad, Inc.

Except as so admitted, He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 25 of the first amended complaint, and, on that basis, denies those allegations.

26. Answering paragraph 26 of the first amended complaint, He admits the allegations therein.

27. Answering paragraph 27 of the first amended complaint, He admits that he used his Schenker e-mail account to communicate with RoadEx America, Inc. ("RoadEx") to ensure that its trucking services were performed in a satisfactory manner, and in accordance with expectations regarding timing. Except as so admitted, He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 27 of the first amended complaint, and, on that basis, denies those allegations.

28. Answering paragraph 28 of the first amended complaint, He admits that: (a) upon completing deliveries, RoadEx issued invoices to Schenker for its services; and (b) he caused Schenker to pay RoadEx. Except as so admitted, He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 28 of the first amended complaint, and, on that basis, denies those allegations.

29. Answering paragraph 29 of the first amended complaint, He admits that: (a) he never opened files for RoadEx's trucking services; (b) he booked all of the expenses for RoadEx's trucking services in unrelated Schenker shipment files; and (c) he caused Schenker to pay the costs for RoadEx's trucking services. Except as so admitted, He denies each and every allegation contained in paragraph 29 of the first amended complaint.

30. Answering paragraph 30 of the first amended complaint, He admits that: (a) he arranged and oversaw delivery services relating to the so-called "Bakersfield Shipments"; and (b) he caused Schenker to pay for the

delivery services relating to the so-called "Bakersfield Shipments." Except as so admitted, He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 30 of the first amended complaint, and, on that basis, denies those allegations.

31. Answering paragraph 31 of the first amended complaint, He denies that: (a) he never collected any revenue for Schenker, resulting in a total loss to Schenker; (b) there was an "Enterprise"; (c) there was a "scheme"; (d) the Defendants knew Schenker would be stuck with the cost, but that it would collect no revenue; (e) the supposed "Enterprise" charged or collected anything; and (f) the Defendants received 100% profit on the prices charged and collected by the supposed "Enterprise." He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 31, of the first amended complaint, and, on that basis, denies them.

32. Answering paragraph 32 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

33. Answering paragraph 33 of the first amended complaint, He admits that: (a) he arranged and oversaw the so-called "Bakersfield Shipments"; and (b) he sent e-mail communications to Kong. Except as so admitted, He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 33, and, on that basis, denies those allegations.

34. Answering paragraph 34 of the first amended complaint, He admits that: (a) he sent some proofs of delivery to Kong related to the so-called "Bakersfield Shipments"; and (b) he caused Schenker to pay RoadEx for its trucking services related to at least some of the so-called "Bakersfield Shipments." Except as so admitted, He is without sufficient knowledge or

information to form a belief as to the remaining allegations of paragraph 34 of the first amended complaint, and, on that basis, denies those allegations.

35. Answering paragraph 35 of the first amended complaint, He admits that it is possible that Kong and ACS could use shipment documentation to collect revenue for services that He caused Schenker to pay for. Except as so admitted, He denies each and every allegation contained in paragraph 35.

36. Answering paragraph 36 of the first amended complaint, He denies each and every allegation therein, including the allegation that there was an "Enterprise," and the allegation that Schenker was defrauded.

37. Answering paragraph 37 of the first amended complaint, He admits that: (a) he arranged for, and caused Schenker to pay for, shipments that originated in China; and (b) he caused Schenker to pay for ocean transportation for shipments that originated in China; and (c) he caused Schenker to pay for port-related expenses, customs-related expenses, storage expenses, and trucking delivery expenses related to shipments that originated in China. Except as so admitted, He denies each and every allegation contained in paragraph 37 of the first amended complaint, including the allegation that there was an "Enterprise," and the allegation that Schenker was defrauded.

38. Answering paragraph 38 of the first amended complaint, He admits the allegations therein.

39. Answering paragraph 39 of the first amended complaint, He admits that: (a) he developed a business relationship with Peng Huang and China Container Line ("CCL Shenzhen"); (b) he used his Schenker position, office, and resources to organize ocean shipments from China, which shipments were sometimes from Shenzhen; (c) Schenker received invoices from CCL Shenzhen for certain ocean shipments from China; and (d) he

caused Schenker to pay for the so-called "Shenzhen Shipments." Except as so admitted, He denies each and every allegation contained in paragraph 39 of the first amended complaint, including the allegation that Schenker was defrauded.

40. Answering paragraph 40 of the first amended complaint, He admits that: (a) he sometimes forward e-mails from his Schenker e-mail account to his personal Yahoo! e-mail account; and (b) he had e-mail communications with Ho, some of which likely concerned the so-called "Shenzhen Shipments." Further answering paragraph 40 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) shortly after Ho's employment with Schenker ended, Ho sent him an e-mail on March 22, 2010 with Ho's new contact details; (b) the alleged March 22, 2010 e-mail from Ho went to his Schenker e-mail address; (c) the alleged March 22, 2010 e-mail came from george@leaderintl.com; (d) the alleged March 22, 2010 e-mail contained a signature block that read "George Ho, Leader Expedite, 17008 Evergreen Place #D200, City of Industry, California 91745"; (e) several of the so-called "Shenzhen Shipments" were for a consignee party named Metro Vista, located at 114 E. Adams Avenue, Alhambra, CA 91801; (f) the telephone number for Metro Vista on the shipment documentation is the same as that provided by Ho, to He, in the alleged March 22, 2010 e-mail, and reads "CONTACT: GEORGE TEL: [telephone number]"; (g) He used his Schenker e-mail account to communicate with a person named "Clark" about some of the so-called "Shenzen Shipments"; (h) "Clark" had the e-mail address clark@leaderintl.com; (i) the e-mail extenstion @leaderintl.com is the same as that used by Ho in the alleged March 22, 2010 e-mail; and (j) Ho, and Ho d/b/a Leader Expedite routinely performed customs clearance services in

connection with the so-called "Shenzhen Shipments." Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 40, including the allegation that Schenker was defrauded.

41. Answering paragraph 41 of the first amended complaint, He admits that: (a) he sent Kong documentation related to at least some of the so-called "Shenzhen Shipments"; (b) he sent some arrival notices to Kong, which arrival notices related to at least some of the so-called "Shenzhen Shipments"; (c) Kong, or ACS, might have been able to use documentation related to at least some of the so-called "Shenzhen Shipments" to collect revenue for services related to the so-called "Shenzhen Shipments"; and (d) he caused Schenker to pay for services relating to the so-called "Shenzhen Shipments". He is without sufficient knowledge or information to form a belief as to the allegation that Schenker was able to uncover some e-mails that he had deleted. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denied each and every allegation contained in paragraph 41, including the allegation that there was an "Enterprise," and the allegation that Schenker was defrauded.

42. Answering paragraph 42 of the first amended complaint, He admits that: (a) he received invoices from CCL Shenzhen in connection with the so-called "Shenzhen Shipments" (the "Shenzhen Invoices"); and (b) he caused Schenker to pay the so-called "Shenzhen Invoices." Except as so admitted, He denies each and every allegation contained in paragraph 42.

43. Answering paragraph 43 of the first amended complaint, He admits that: (a) he used his Schenker e-mail account to instruct CCL Shenzhen's affiliate in the Los Angeles area ("CCL Los Angeles") to offset the so-called "Shenzhen Invoices" against payments that were due to

Schenker; (b) he was able to instruct CCL Los Angeles to offset the so-called "Shenzhen Invoices" against payments that were due to Schenker because CCL Los Angeles and Schenker were working together on other legitimate business transactions that involved shipments from China; (c) on a monthly basis, CCL Los Angeles owed Schenker for services that Schenker rendered in connection with the other legitimate business transactions that involved shipments from China; and (d) he used this other source of revenue for Schenker to offset, and therefore hide, the so-called "Shenzhen Invoices." He is without sufficient knowledge or information to form a belief as to the allegation that business transactions between CCL and Schenker involving shipments from China did not involve shipments from Shenzhen, and, on that basis, denies that allegation. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 43, including the allegation that there was an "Enterprise," and the allegation that Schenker was defrauded.

44. Answering paragraph 44 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) on June 7, 2011, he sent CCL Los Angeles an e-mail with the message "Dear Stephanie: [¶] Attached are the invoices that I need to pay CCL Shenzhen office, Pls kindly help to process the payment to CCL Shenzhen office and deduct the amount from the monthly check payment. [¶] Thank you so much for your helps!!"; and (b) attached to the alleged June 7, 2011 e-mail were seven of the so-called "Shenzhen Invoices" relating to seven different shipments totaling $2,111.20." Except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 44, including the allegation that there was a "scheme."

45. Answering paragraph 45 of the first amended complaint, He admits that: (a) with the knowledge and approval of his immediate supervisor at Schenker, he used the so-called "offset approach" repeatedly — generally on a monthly basis — up until approximately April 2012; (b) he never created Schenker shipment files for the so-called "Shenzhen Shipments"; and (c) with the knowledge and approval of his immediate supervisor at Schenker, he excluded other Schenker employees from the so-called "Shenzhen Shipments." Except as so admitted, He denies each and every allegation contained in paragraph 45 of the first amended complaint, including the allegation that there was an "Enterprise."

46. Answering paragraph 46 of the first amended complaint, He admits that: (a) with the knowledge and approval of his immediate supervisor at Schenker, he offset the so-called "Shenzhen Invoices" against certain Schenker revenue; (b) he used his Schenker position to arrange for destination services for the so-called "Shenzhen Shipments," such as customs clearance, port fees, storage fees, and trucking services to the final destination in the United States; (c) Schenker received invoices from third parties who performed services related to the so-called "Shenzhen Shipments," and he caused Schenker to pay those invoices; and (d) with the knowledge and approval of his immediate supervisor at Schenker, he put the paid expenses related to the so-called "Shenzhen Shipments" in unrelated shipment files. He is without sufficient knowledge or information to form a belief as to the allegation that the available evidence that Schenker was able to uncover indicates that the so-called "Shenzhen Invoices" that he offset against other Schenker revenue totaled approximately $30,000. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 46, including the allegation that there was

an "Enterprise."

47. Answering paragraph 47 of the first amended complaint, He admits that: (a) starting in or about April 2012, he could no longer offset the so-called "Shenzhen Invoices" against revenue due to Schenker from CCL Los Angeles, because amount of the so-called "Shenzhen Invoices" exceeded the revenue due to Schenker from CCL Los Angeles; and (b) he decided to have Schenker pay for the so-called "Shenzhen Invoices" with checks issued on Schenker's bank account. Except as so admitted, He denies each and every allegation contained in paragraph 47, and, on that basis, denies those allegations.

48. Answering paragraph 48 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

49. Answering paragraph 49 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

50. Answering paragraph 50 of the first amended complaint, He admits that: (a) as a manger, he had check signing authority up to $15,000, provided another manager with check signing authority also signed the check; (b) if the check amount exceeded $15,000, then a next-level manager had to approve the check; (c) he was careful to stay under the $15,000 limit; and (d) he was careful to ask another manager in the office who was not in a position to question the purpose of the check to be the second signatory. Except as so admitted, He denies each and every allegation in paragraph 50 of the first amended complaint, including the allegation that Schenker was defrauded.

51. Answering paragraph 51 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the

allegations contained therein, and, on that basis, denies those allegations.

52. Answering paragraph 52 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

53. Answering paragraph 53 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

54. Answering paragraph 54 of the first amended complaint, He admits that: (a) he deleted some communications; and (b) with the knowledge and approval of his immediate supervisor at Schenker, payments for the so-called "Shenzhen Invoices" were placed in different Schenker shipment files. He is without sufficient knowledge or information to form a belief as to the allegation that the Schenker shipment files into which the so-called "Shenzhen Invoices" were placed had sufficient revenue to cover additional expenses without triggering Schenker's internal accounting controls. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denied each and every allegation contained in paragraph 54, included the allegation that Schenker was defrauded.

55. Answering paragraph 55 of the first amended complaint, He denies each and every allegation therein.

56. Answering paragraph 56 of the first amended complaint, He admits that he used his Schenker position to arrange for destination services for the so-called "Shenzhen Shipments," such as customs clearance, port fees, storage fees, and trucking services. Except as so admitted, He denies each and every allegation contained in paragraph 56 of the first amended complaint, including the allegation that Schenker was damaged in any amount.

57. Answering paragraph 57 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies those allegations: (a) shipments fitting the same pattern as the so-called "Shenzhen Shipments" ceased immediately after he resigned from Schenker; and (b) "Paul" at CCL Shenzhen sent him an e-mail on March 11, 2013, with the message "Hi Daryl. Lont (sic) no booking,pls advise if any problem. thank you." Except as denied on the basis of insufficient knowledge or information to form a belief, He denied each and every allegation contained in paragraph 57 of the first amended complaint, including the allegation that there was an "Enterprise," and the allegation that Schenker was defrauded.

58. Answering paragraph 58 of the first amended complaint, He admits that: (a) by e-mail at 11:12 p.m., on Sunday, March 10, 2013, he resigned from his position at Schenker; (b) he never returned to work at Schenker; and (c) he joined ACS. Except as so admitted, He denies each and every allegation contained in paragraph 58 of the first amended complaint.

59. Answering paragraph 59 of the first amended complaint, He admits that: (a) he resigned from Schenker; (b) he had been managing the "Less Than Container Load" department at Schenker's Carson, California, location. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) after he resigned from Schenker, Schenker's immediate focus was to make sure the "Less Than Container Load" department at its Carson, California location continued to operate without disruption; and (b) several Schenker personnel left their regular workplaces at other Schenker locations, including Newark, New Jersey, and the Chicago area, to travel to Schenker's location in Carson to manage the "Less Than Container Load" department there, until a different Schenker employee could assume his old duties in a permanent

capacity. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation of paragraph 59 of the first amended complaint, including the allegation that there was a fraud.

60. Answering paragraph 60 of the first amended complaint, He admits that: (a) he caused Schenker to issue some paper checks to CCL Los Angeles before he resigned; (b) he attached to some checks, as support for their issuance, invoices Schenker had received from CCL; (c) Olivia Fidler ("Fidler") was his immediate supervisor at Schenker; and (d) the checks to CCL Los Angeles had the appearance of disorganization, but not illegitimacy. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) as Schenker personnel began to work in his old positon, it was noticed that he had caused Schenker to issue paper checks totaling $32,636 to CCL Los Angeles in the final days before his resignation; and (b) Fidler contacted an employee at CCL Los Angeles and was told that the checks had been for work performed by CCL Shenzhen rather than at CCL Los Angeles. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 60, including the allegation that Fidler was not able to readily detect why the checks to CCL Los Angeles had been written.

61. Answering paragraph 61 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) Fidler made contact with "Paul" at CCL Shenzhen; and (b) "Paul" provided Fidler with certain shipping documents for invoices CCL Shenzhen had issued to Schenker for the so-called "Shenzhen Shipments," which included

documents such as international bills of lading and waybills. Except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 61 of the first amended complaint.

62. Answering paragraph 62 of the first amended complaint, He admits that: (a) CCL Shenzhen had performed actual freight forwarding services for Schenker; (b) he had placed invoices from CCL Shenzhen and checks that Schenker paid to CCL Los Angeles in Schenker shipment files that otherwise appeared not to relate to services involving CCL or Shenzhen; (c) his placement of invoices from CCL Shenzhen and checks that Schenker paid to CCL Los Angeles in Schenker shipment files that otherwise appeared not to relate to services involving CCL or Shenzhen suggested disorganization or mismanagement, but not fraud or illegitimacy. He is without sufficient knowledge or information to form a belief as to the allegation that, when Fidler received the underlying shipping documents, she saw that they contained information that matched information on the invoices CCL Shenzhen had issued to Schenker, and, on that basis, denies that allegation. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 62 of the first amended complaint.

63. Answering paragraph 63 of the first amended complaint, He admits that CCL Shenzhen had performed real services for Schenker. Except as specifically admitted, He is without sufficient knowledge or information to form a belief as to the remaining allegations of paragraph 63, and, on that basis, denies those allegations.

64. Answering paragraph 64 of the first amended complaint, He admits that: (a) CCL Shenzhen had performed services for Schenker; and (b)

he had deleted some e-mails from his inbox. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) Schenker decided to review He's e-mail files to see if it could find communications that would shed light on the services CCL Shenzhen had performed; (b) in September and October 2013, Schenker obtained access to e-mail messages and their attachments that were stored in He's old work e-mail account; and (c) the e-mails in He's inbox provided little useful information. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 64 of the first amended complaint, including the allegation that he had organized and caused Schenker to pay for extensive freight forwarding services without Schenker's knowledge.

65. Answering paragraph 65 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegations contained therein, and, on that basis, denies those allegations.

66. Answering paragraph 66 of the first amended complaint, He admits that: (a) he sent e-mails to Ho regarding at least some of the so-called "Shenzhen Shipments"; (b) Ho was a former Schenker employee; (c) he had communicated with Kong regarding at least some of the so-called "Bakersfiled Shipments" and regarding at least some of the so-called "Shenzhen Shipments"; and (c) when he was a Schenker employee, he had listed Kong as one of his emergency contacts. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies those allegations: (a) as Gabrielle Fodor ("Fodor") began her investigation, Schenker discovered e-mails in He's e-mail outbox that, it appeared, may have some connection to the CCL Shenzhen invoices; (b) Ho, Leader Expedite, and Metro Vista appeared on some customs

documents relating to the so-called "Shenzhen Shipments"; (c) Ho and his various alter egos appeared on more and more e-mails and documents that Schenker discovered; (d) Schenker researched Ho and discovered that he was a former Schenker employee who had been fired in early 2010; (e) Kong and ACS were listed on some of the shipping documents for the so-called "Shenzhen Shipments"; (f) Schenker researched ACS and discovered that the company's president was listed as Kong on the website for the California Secretary of State; and (g) Schenker discovered that, when He was a Schenker employee, he had listed Kong as one of this emergency contacts. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 66 of the first amended complaint, including the allegation that there was an "Enterprise," and the allegation that there was a "scheme."

67. Answering paragraph 67 of the first amended complaint, He admits that: (a) some expenses that he caused Schenker to pay were in unrelated shipment files; (b) he deleted some e-mails; and (c) from March 2011 to approximately April 2012, payments of invoices for the so-called "Shenzhen Shipments" were made by offsetting them against money owed to Schenker by CCL Los Angeles. He is without sufficient knowledge or information to form a belief as to the allegation that, despite gradual discoveries, it remained difficult and time-consuming for Schenker to determine whether its payment of the invoices for the so-called "Shenzhen Shipments" had been for legitimate services, had been in error, or was, instead something more sinister. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 67 of the first amended complaint, including the allegation that there was an

"Enterprise," and the allegation that there was a "scheme."

68. Answering paragraph 68 of the first amended complaint, He admits that: (a) ACS made payments to Schenker; and (b) it defies logic that someone stealing from Schenker would simultaneously provide it with revenue. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies those allegations: (a) in March 2014, Fodor discovered payments made by ACS to Schenker within the shipment files she was reviewing; (b) the payments made by ACS to Schenker totaled approximately $135,000, and were all dated between January 2012 and March 2013; (c) by this time Schenker had identified Kong and ACS as possibly being involved with the so-called "Shenzhen Shipments," though Fodor's review of the shipment files was still ongoing and Schenker could not yet reach any conclusions about the legitimacy of Schenker's payment of the CCL Shenzhen invoices until her review was complete; (d) the discovery of payments from ACS initially caused Schenker to believe that Kong and ACS could not have been involved in any wrongdoing; and (e) when Fodor discovered the payments from ACS to Schenker, she initially believed that there must be some innocent explanation for all of the payments ACS had made for the CCL Shenzhen invoices. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 68 of the first amended complaint, including the allegation that there was an "Enterprise," and the allegation that there was a "scheme."

69. Answering paragraph 69 of the first amended complaint, He admits that he had e-mailed, to Kong and to Ho, some information relating to the CCL Shenzhen invoices. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that

basis, denied them: (a) Schenker's review of the shipment files to see if any other payment could be identified continued until August 2014; (b) in August 2014, Schenker concluded that it had, in fact, been defrauded, because it had found no evidence of any further payments collected by He or evidence that even the payments it had received from ACS had been legitimately made to bring in revenue for Schenker in relation to the invoices from CCL Shenzhen; and (c) in August 2014, Schenker concluded that Kong, ACS, Ho, and Ho d/b/a Leader Expedite had participated in the alleged fraud because of their appearance on shipping documents relating to the CCL Shenzhen invoices and the discovery that He had e-mailed information relating to those invoices to Kong, ACS, Ho, and Ho d/b/a Leader Expedite. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 69 of the first amended complaint, including the allegation that Schenker had been defrauded.

70. In answering paragraph 70 of the first amended complaint, He admits that the shipment files where the payments from ACS were placed were unrelated to the payments. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) Schenker concluded that Kong and ACS had assisted in the alleged fraud, despite the evidence of the payments ACS had made to Schenker, for several reasons; (b) one of the reasons Schenker concluded that Kong and ACS had assisted in the alleged fraud, despite the evidence of the payments ACS had made to Schenker, was that the file review established that no shipment files had been opened at Schenker's Carson location that involved any work relating to ACS, in other words, the review determined that there was no reason Schenker should have received any revenue from ACS; (c) another of the reasons Schenker concluded that Kong and ACS had

assisted in the alleged fraud, despite the evidence of the payments ACS had made to Schenker, was that the file review found no other payments to Schenker where, liked the payments from ACS, it was not apparent why Schenker had received the payments; and (d) another of the reasons Schenker concluded that Kong and ACS had assisted in the alleged fraud, despie the evidence of the payments ACS had made to Schenker, was that the file review determined that the shipment files where the payments from ACS had been placed were entirely unrelated to the payments. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 70 of the complaint, including the allegation that there was an "Enterprise," and the allegation that there was a "scheme."

71. Answering paragraph 71 of the first amended complaint, He denies each and every allegation therein.

72. Answering paragraph 72 of the first amended complaint, He denies each and every allegation therein.

73. Answering paragraph 73 of the first amended complaint, He admits that he caused Schenker to pay invoices from the trucking company RoadEx, which invoices he put in unrelated shipment files. He is without sufficient knowledge or information to form a belief as to the following allegations, and, on that basis, denies them: (a) in September 2015, Schenker discovered a series of invoices from the trucking company RoadEx that He had caused Schenker to pay, and then put in unrelated shipment files; (b) Schenker matched the invoices from RoadEx with e-mails He had sent to RoadEx; and (c) before this time, Schenker had believed that the supposed Enterprises's alleged fraud was isolated to the expenses that it has supposedly caused Schenker to pay for the so-called "Shenzhen Shipments"

and did not realize that the supposed scheme expanded further. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 73 of the first amended complaint, including the allegation that there was an "Enterprise," and the allegation that there was a "scheme."

74. Answering paragraph 74 of the first amended complaint, He admits that the recipient of the so-called "Bakersfield Shipments" was Sunshine Metal Clad, Inc. He is without sufficient knowledge or information to form a belief as to the remaining allegations of contained in paragraph 74, and, on that basis, denies those allegations.

75. Answering paragraph 75 of the first amended complaint, He references paragraphs 1 through 61 of this answer, and, by such reference, incorporates herein all of the denials and admissions contained therein, as if the same were set forth herein in full.

76. Answering paragraph 76 of the first amended complaint, He admits that Count I is alleged against all of the named defendants.

77. Answering paragraph 77 of the first amended complaint, He denies each and every allegation therein.

78. Answering paragraph 78 of the first amended complaint, He admits that, during the time period March 2011 until approximately March 10, 2013, He organized, and caused Schenker to pay for, certain freight forwarding services, and, in some cases, informed the other defendants of the progress of those services, and when they were complete. Except as so admitted, He denies each and every allegation contained in paragraph 78 of the first amended complaint.

79. Answering paragraph 79 of the first amended complaint, He denies each and every allegation therein.

80. Answering paragraph 80 of the first amended complaint, He denies each and every allegation therein.

81. Answering paragraph 81 of the first amended complaint, He is without sufficient knowledge or information to form a belief as the following allegations, and, on that basis, denies them: (a) on December 14, 2011, he sent an e-mail to Nicholas Sims, of RoadEx, requesting that RoadEx deliver nine containers to Sunshine Metal, in Bakersfield, California; (b) attached to the alleged December 14, 2011 e-mail was a Schenker delivery order for the containers that included information such as their unique container numbers, the location of the containers, ocean carrier name, house and master bill of lading number, delivery address, description of the cargo, and weight of the containers; (c) on April 14, 2012, he sent an e-mail to Nicholas Sims requesting that RoadEx deliver two containers to Sunshine Metal, in Bakersfield, California; (d) attached to the alleged April 14, 2012 e-mail was a Schenker delivery order for the containers that included information such as their unique container numbers, the location of the containers, ocean carrier name, house and master bill of lading number, delivery address, description of the cargo, and weight of the containers; (e) on February 8, 2012, he sent an e-mail to Etsuko Masaki, another Schenker employee, asking her to pay invoices that had been received from RoadEx; (f) attached to the alleged February 8, 2012 e-mail were invoices that Schenker had received from RoadEx for trucking delivery services related to the so-called "Bakersfield Shipments" that RoadEx had completed at He's request; (g) on or about December 9, 2011, Ho d/b/a Leader Expedite mailed an invoice to ATA Logistics for $4,905.00; (h) the alleged December 9, 2011 invoice lists nine ocean containers, identified by unique ocean container numbers, delivered to "Bakerfield (sic), CA 93307"; (i) the alleged December 9, 2011 invoice contains other unique identifying information,

such as the bill of lading number, the vessel name and voyage number, and a description of the cargo; (j) all of the details on the alleged December 9, 2011 invoice match exactly with invoices that were issued to Schenker by RoadEx for RoadEx's pick up and delivery of the same cargo; (k) on or about December 27, 2011, Ho d/b/a Leader Expedite mailed an invoice to ATA Logistics for $5,405.00; (l) the alleged December 27, 2011 invoice lists ten ocean containers, identified by unique ocean container numbers, delivered to "Bakerfield (sic), CA 93307"; (m) the alleged December 27, 2011 invoice contains other unique identifying information, such as the bill of lading number, the vessel name and voyage number, and a description of the cargo; (n) all of the details on the alleged December 27, 2011 invoice match exactly with invoices that were issued to Schenker by RoadEx for RoadEx's pick up and delivery of this same cargo; (o) on February 17, 2012, he sent an e-mail to Kong that attached a proof of delivery document showing that RoadEx had delivered a container to Sunshine Metal, in Bakersfield, California, on February 16, 2012; (p) the alleged proof of delivery document allegedly attached to the alleged February 17, 2012 e-mail included extensive details, such as the container number, bill of lading number, and commodity description; (q) a message accompanying the alleged proof of delivery document allegedly attached to the alleged February 17, 2012 e-mail read, "Here you go one (sic), will provide you another one shortly"; (r) on February 20, 2012, he sent an e-mail to Kong that attached a proof of delivery document showing that RoadEx had delivered a container to Sunshine Metal, in Bakersfield, California, on February 16, 2012; (s) the alleged proof of delivery document attached to the alleged February 20, 2012 e-mail, included extensive details, such as container number, bill of lading number, and commodity description; (t) on March 12, 2012, he sent an e-mail to Kong that attached a proof of delivery document showing that

RoadEx had delivered one container to Sunshine Metal, in Bakersfield, California, on March 5, 2012, and had delivered three containers to Sunshine Metal, in Bakersfield, California, on March 6, 2012; (u) the alleged proof of delivery document allegedly attached to the alleged March 12, 2012 e-mail included extensive details, such as the container numbers, bill of lading numbers, and commodity descriptions; (v) on May 26, 2011, he sent an e-mail to Peng Huang of CCL Shenzhen inquiring about ocean shipments he had caused CCL Shenzhen to send to the United States from China under his authority as an Ocean Import Manager with Schenker; (w) the alleged May 26, 2011 e-mail is one example of dozens of e-mails He sent to Peng Huang between approximately March 2011 and March 2013 in regard to shipments He had ordered from CCL Shenzen; (x) on July 7, 2011, he sent an e-mail to Kong attaching an arrival notice for a shipment that CCL Shenzhen had transported from China to the United States after He organized the shipment; (y) on September 23, 2011, he sent an e-mail to Kong attaching an arrival notice for a shipment that CCL Shenzhen had transported from China to the United States after He organized the shipment; (z) on June 7, 2011, he sent an e-mail to Stephanie Fang, of CCL Los Angeles, attaching seven invoices Schenker had received from CCL Shenzhen for services relating to the so-called "Shenzhen Shipments" and requesting that CCL Los Angeles deduct the total amount of the invoices from money that CCL Los Angeles owed to Schenker; (aa) on September 1, 2011, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching three invoices Schenker had received from CCL Shenzhen for services relating to the so-called "Shenzhen Shipments" and requesting that CCL Los Angeles deduct the total amount of the invoices from money that CCL Los Angeles owed to Schenker; (bb) on February 29, 2012, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching four invoices Schenker had received from CCL Shenzhen for

services relating to the so-called "Shenzhen Shipments" and requesting that CCL Los Angeles deduct the total amount of the invoices from money that CCL Los Angeles owed to Schenker; (cc) on April 4, 2012, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching nine invoices Schenker had received for services relating to the so-called "Shenzhen Shipments" and requesting that CCL Los Angeles deduct the total amount of the invoices from money that CCL Los Angeles owed to Schenker, and adding, however, that, if CCL Los Angeles did not owe enough money to Schenker to cover the invoices, CCL Los Angeles should issue an invoice for the remaining balance and He would "cut" a check to CCL Los Angeles "to clear this up"; (dd) on July 10, 2012, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching three invoices Schenker had received from CCL Shenzhen; (ee) in the alleged July 10, 2012 e-mail, he requested that Ms. Chen "issue 3 different invoices for above 3 attachements to me," after which "I will issue checks for these invoices to you by 7/15"; (ff) on September 14, 2012, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching 17 invoices Schenker had received from CCL Shenzhen, and attaching copies of checks made out to CCL Los Angeles and paid by Schenker that He said he "will send out via UPS today"; (gg) on November 29, 2012, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching seven invoices Schenker had received from CCL Shenzen; (hh) in the alleged November 29, 2012 e-mail, he wrote that he would "cut checks for attached invoices . . . and will over night the checks to your office. You should rec'd the package tomorrow"; (ii) in the alleged November 29, 2012 e-mail, he requested that Ms. Chen "pls help to pay CCL SZX [Shenzhen] to clear these invoices"; (jj) on January 7, 2013, he sent an e-mail to Paul, of CCL Shenzhen, that attached an e-mail He had received from Lucy Chen, of CCL Los Angeles, on January 2, 2013; (kk) the alleged January 2, 2103 e-mail from Ms. Chen attached 13 invoices that Schenker

had received from CCL Shenzhen; (ll) in the alleged January 7, 2013 e-mail to Paul, he asked Paul to “Pls see attached e-mail, those invoices were paid to CCL USA last week, and I will send another check to CCL USA office with amount $28461 today. And then I will send ont more check with the Nov invoice next week”; (mm) in the alleged January 7, 2012 e-mail to Paul, he explained that he was sending separate checks for each invoice because “I want to make sure payment to be made on schedule” and also because “I need to make sure I have enough cash float for my team weekly, so I need to cut check separately”; (nn) in the alleged January 7, 2012 e-mail to Paul, he begged Paul to “Pls be patient, I will get all these clear per the schedule I have provided to you. Thanks for your understanding”; (oo) on February 12, 2013, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching 11 invoices Schenker had received from CCL Shenzhen; (pp) in the alleged February 12, 2013 e-mail, he wrote that he would send a check to cover the invoices that CCL Los Angeles would receive “by UPS tomorrow”; (qq) on March 7, 2012, he sent an e-mail to Lucy Chen, of CCL Los Angeles, attaching nine invoices Schenker had received from CCL Shenzhen; (rr) in the alleged March 7, 2012 e-mail, he wrote that he had place in the mail a check from Schenker for $31,636.00 to cover the invoices that Ms. Chen would receive “either tomorrow or next Monday.” Except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 81 of the first amended complaint.

82. Answering paragraph 82 of the first amended complaint, He denies each and every allegation therein.

83. Answering paragraph 83 of the first amended complaint, He denies each and every allegation therein.

/ / /

84. Answering paragraph 84 of the first amended complaint, He denies each and every allegation contained therein.

85. Answering paragraph 85 of the first amended complaint, He references paragraphs 1 through 71 of this answer, and, by such reference, incorporates herein all of the denials and admissions contained therein, as if the same were set forth herein in full.

86. Answering paragraph 86 of the first amended complaint, He admits that Count II is alleged against all of the named defendants.

87. Answering paragraph 87 of the first amended complaint, He denies each and every allegation therein.

88. Answering paragraph 88 of the first amended complaint, He denies each and every allegation therein.

89. Answering paragraph 89 of the first amended complaint, He denies each and every allegation therein.

90. Answering paragraph 90 of the first amended complaint, He references paragraphs 1 through 76 of this answer, and, by such reference, incorporates herein all of the denials and admissions contained therein, as if the same were set forth herein in full.

91. Answering paragraph 91 of the first amended complaint, He admits that Count III is alleged against him.

92. Answering paragraph 92 of the first amended complaint, He admits the allegations therein.

93. Answering paragraph 93 of the first amended complaint, He admits that he organized and paid for freight forwarding services by using Schenker's resources and his position as a Schenker employee. Except as so admitted, He denies each and every allegation contained in paragraph 93 of the first amended complaint.

/ / /

94. Answering paragraph 94 of the first amended complaint, He denies each and every allegation therein.

95. Answering paragraph 95 of the first amended complaint, He denies each and every allegation therein.

96. Answering paragraph 96 of the first amended complaint, He denies each and every allegation therein.

97. Answering paragraph 97 of the first amended complaint, He references paragraphs 1 through 83 of this answer, and, by such reference, incorporates herein all of the denials and admissions contained therein, as if the same were set forth herein in full.

98. Answering paragraph 98 of the first amended complaint, He admits that Count IV is alleged against Kong, ACS, Ho, and Ho d/b/a Leader Expedite (the "Non-Employee Defendants").

99. Answering paragraph 99 of the first amended complaint, He is without sufficient knowledge or information to form a belief as to the allegation that each of the Non-Employee Defendants knew that He was an employee of Schenker, and, accordingly, had a duty of undivided loyalty to Schenker. Except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 99 of the first amended complaint.

100. Answering paragraph 100 of the first amended complaint, He denies each and every allegation therein.

101. Answering paragraph 101 of the first amended complaint, He denies each and every allegation therein.

102. Answering paragraph 102 of the first amended complaint, He denies each and every allegation therein.

103. Answering paragraph 101 of the first amended complaint, He references paragraphs 1 through 89 of this answer, and, by such reference,

incorporates herein all of the denials and admissions contained therein, as if the same were set forth herein in full.

104. Answering paragraph 104 of the first amended complaint, He admits that Count V is alleged against him.

105. Answering paragraph 105 of the first amended complaint, He denies each and every allegation therein.

106. Answering paragraph 106 of the first amended complaint, He admits that: (a) with the knowledge of, and at the request of, his immediate supervisor at Schenker, he placed certain expenses in shipment files that were unrelated to certain services he had organized; and (b) with the knowledge of, and the consent of, his immediate supervisor at Schenker, he offset certain expenses against payments that were owed to Schenker by CCL Los Angeles. Except as so admitted, He denies each and every allegation contained in paragraph 106 of the first amended complaint.

107. Answering paragraph 106 of the first amended complaint, He denies each and every allegation therein.

108. Answering paragraph 108 of the first amended complaint, He admits that: (a) with the knowledge of, and at the request of, his immediate supervisor at Schenker, he placed certain expenses in shipment files that were unrelated to certain services he had organized; and (b) with the knowledge of, and the consent of, his immediate supervisor at Schenker, he offset certain expenses against payments that were owed to Schenker by CCL Los Angeles. Except as so admitted, He denies each and every allegation contained in paragraph 108 of the first amended complaint.

109. Answering paragraph 109 of the first amended complaint, He denies each and every allegation therein.

110. Answering paragraph 110 of the first amended complaint, He admits that Schenker justifiably relied that he was not participating in an

elaborate scheme to steal hundreds of thousands of dollars. He is without sufficient knowledge or information to form a belief as to the allegation that Schenker trusted that he was not concealing expenses he had caused Schenker to pay or taking actions to acquire for himself revenue that should have been paid to Schenker, and, on that basis denies that allegation. Except as specifically admitted, and except as denied on the basis of insufficient knowledge or information to form a belief, He denies each and every allegation contained in paragraph 110 of the first amended complaint.

111. Answering paragraph 111 of the first amended complaint, He denies each and every allegation therein.

112. Answering paragraph 112 of the first amended complaint, He denies each and every allegation therein.

113. Answering paragraph 113 of the first amended complaint, He references paragraphs 1 through 99 of this answer, and, by such reference, incorporates herein all of the denials and admissions contained therein, as if the same were set forth herein in full.

114. Answering paragraph 114 of the first amended complaint, He admits that Count VI is alleged against the Non-Employee Defendants.

115. Answering paragraph 115 of the first amended complaint, He denies each and every allegation therein.

116. Answering paragraph 116 of the first amended complaint, He denies each and every allegation therein.

117. Answering paragraph 117 of the first amended complaint, He denies each and every allegation therein.

118. Answering paragraph 118 of the first amended complaint, He denies each and every allegation therein.

/ / /

/ / /

**Prayer**

He prays judgment:

A. That Schenker take nothing by its first amended complaint in this action.

B. That judgment be entered for the defendants in this action.

C. That He be awarded his costs of suit.

D. That He be granted any and all other relief to which he may be justly entitled.

Dated: November 17, 2016

ROXBOROUGH, POMERANCE, NYE & ADREANI LLP

By: *<u>/s/ David A. Carman</u>*
Gary A. Nye
David A. Carman
Attorneys for Defendant Daryl Wen He

**Demand for Jury**

Defendant Daryl Wen He demands trial by jury for all triable issues in this action.

Dated: November 17, 2016

ROXBOROUGH, POMERANCE, NYE & ADREANI LLP

By: *<u>/s/ David A. Carman</u>*
Gary A. Nye
David A. Carman
Attorneys for Defendant Daryl Wen He